IN THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF COLORADO

Civil Action No.

BIKINVENTION 2 CC, a South African corporation

Plaintiff,

v.

SQUIRT, LLC, a Utah limited liability company, and JOHN TUCKER, an individual,

Defendants,

# COMPLAINT

Plaintiff Bikinvention 2 CC, for its Complaint, alleges as follows:

## THE PARTIES

1. Bikinvention 2 CC ("Bikinvention") is a South Africa corporation with a principal place of business located at 121 Gladiolus Street, Knysna 6570, South Africa. Bikinvention does business in the United States including, but not limited to, the State of Colorado through its distributor John Davis, located at 2055 Bluff Street, Boulder, Colorado 80304.

2. Defendant Squirt, LLC is a Utah limited liability company with its principal place of business located at 4721 Winchester Court, Park City, Utah 84098.

3. Defendant John Tucker ("Tucker") is a Utah resident and an individual who, upon information and belief, resides at 4721 Winchester Court, Park City, Utah 84098. Upon information and belief, Mr. Tucker is a Member of Squirt, LLC as well as its President and Founder. (Collectively, Squirt, LLC and Mr. Tucker may be referred to as "Defendants").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 and 28 U.S.C. § 1338(a) because Plaintiff's claims for trademark infringement, false designation of origin, and false description arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

5. This Court has supplemental jurisdiction over Bikinvention's state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over Defendants because Defendants have transacted business and committed tortious acts in Colorado.

7. Venue is proper before this Court pursuant to 28 U.S.C. § 1391, because Defendants have infringed Bikinvention's trademark in this District and have committed acts in violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.*

## FACTUAL ALLEGATIONS

8. On September 16, 2008, Bikinvention registered a trademark with the United States Patent and Trademark Office, Reg. No. 3,500,834 for "Squirt," a lubricant for bicycles. A copy of Squirt's trademark registration is attached as Exhibit A.

9. For almost ten years, Squirt products have been sold by Bikinvention, both directly and through third party distributors, to cyclists throughout the world. Over the last few years, Bikinvention has been working diligently and successfully to bring Squirt products to the United States' marketplace through local distributors.

10. Squirt Long Lasting Dry Lube ("Squirt Lube") is Bikinvention's most popular product and the one at issue in this lawsuit. Squirt Lube is well known both internationally and within the United States' cycling community as one of the best bicycle chain lubricants on the market and is regularly touted as such in online forums as well as print magazines. This highly rated wax based lube is known for its "[e]ase of use and incredible efficiency: Squirt really is the whole package." *See, "Hunting For Speed"* by Caley Fretz, *Velo*, Vol. 43, No. 2, February 2014, a

copy of which is attached as Exhibit B.  While the Squirt mark is used on other products within the Squirt brand, in the cycling world, the Squirt mark is synonymous with Squirt Lube.

11. In August 2013, Bikinvention enlisted Defendants as the exclusive distributor of Squirt products, including but not limited to the Squirt Lube, throughout the United States and Canada.

12. In order to distribute Squirt products, Mr. Tucker established Squirt, LLC as a Utah limited liability company and established PayPal, Amazon, EBay, and checking accounts and a website, www.squirtlubeus.com.  Bikinvention images of the Squirt product were used in establishing these accounts, the website and on social media forums such as Facebook.

13. Despite the absence of a formal written agreement, Bikinvention was clear as to the agreement between it and the Defendants from the outset and Mr. Tucker represented his understanding of the boundaries set by Bikinvention. Bikinvention clearly established that Defendants' role as distributor meant that they were limited to distributing Squirt products for the uses for which they were intended on behalf of Bikinvention and that the Squirt brand mark could only be used for Squirt products.  Bikinvention advised Defendants that, as with other Squirt distributors, they could market other products under the Squirt brand with prior approval by Bikinvention and payment to it of royalties for use of the Squirt mark.

14. Beginning at least as early as January 2014, Mr. Tucker advised potential Squirt customers of a "new" lubricant that would be coming out, prompting inquiries from Bikinvention consumers worldwide into a new Squirt product that did not exist and has not been conceived.

15. Bikinvention subsequently learned that the "new" product being pitched by Mr. Tucker at the bicycle exposition is or was to be called "Enduro."  Upon information and belief, Mr. Tucker is selling the "Enduro" lubricant in direct competition with Squirt Lube.  Moreover, upon information and belief, "Enduro" may contain some or all of the components of a product known as

GO, which has been developed as a lubricant for motorbikes and the industrial market and which can be harmful to aluminum components of bicycles.

16. On or about September 2013, Mr. Tucker inquired with a Bikinvention member regarding the effects of diluting Squirt Lube after it has been frozen or its viscosity has otherwise been compromised. At the time, Mr. Tucker presented the query as a concern from a customer who feared loss of product due to freezing. However, as described in further detail below, even as early as September 2013, Mr. Tucker was seeking potential ways in which create a product, believed to be "Enduro," to compete with Squirt Lube.

17. Bikinvention began discussions with Quality Bicycle Products ("QBP"), an online distributor of more than 3000 bicycle related products, in April 2012. In September 2013, Mr. Tucker advised Bikinvention that he had signed an agreement with QBP and that QBP was in the process of determining which Squirt products they would carry and at what price. This agreement was a significant step forward for Bikinvention and the Squirt product line in the United States as it ensured a wide range distribution and permitted Defendants, as Squirt distributors, to focus on the very small and very large bicycle shops. Despite advising Bikinvention that the QBP deal had been made, in December 2013, Mr. Tucker conceded that no agreement had been reached and that QBP would not be carrying the Squirt line of products after all, completely changing the course of projected distribution at a time when it was too late to salvage the relationship for 2014 sales.

18. The Defendants continued to attempt to circumvent Bikinvention and the Squirt line of products throughout the fall of 2013. For example, Mr. Tucker directly contacted at least one supplier of bicycle chain for a new Squirt product that was being formulated by Bikinvention as a pre-lubed chain. Mr. Tucker sought to obtain clean chain from the supplier with the intention of lubricating the chain and selling it himself under the Squirt name, as opposed to obtaining the product through Bikinvention as instructed. Upon learning of Mr. Tucker's rogue attempts to

bypass the corporate process and safeguards set by Bikinvention to ensure product quality, Bikinvention advised Mr. Tucker, in writing, that it would shelve the whole project with him should he continue to act without authority. Specifically, on October 1, 2013, Mr. Tucker was instructed by Bikinvention: "You can do nothing in competition with our business or our products. You distribute products . . . Based on recent events you have to check every idea for products you have with us first."

19. While Mr. Tucker represented to Bikinvention that he understood and agreed to the boundaries of distribution which had been set for him, he continued to surreptitiously market the "new" "Enduro" product completely unrelated to Bikinvention or Squirt. For example, in January 2014, in response to a customer seeking a large bottle of Squirt Lube, Mr. Tucker advised that the 500 ml bottle of Squirt had been discontinued and that "an improved version [was] coming out called Enduro." As stated, "Enduro" is not part of the Squirt product line and is not formulated by or otherwise related to Bikinvention.

20. Mr. Tucker's continued disregard for Bikinvention and the Squirt product line combined with his intention to introduce a product – "Enduro" - in direct competition with Squirt, in contravention of his agreement with Bikinvention led to the termination of Bikinvention's distributorship agreement with Defendants on March 3, 2014.

21. Following the termination of Defendants' distributorship, Bikinvention learned that Defendants were selling a product in Colorado and elsewhere as Squirt Lube but which contained a different formula than that of Bikinvention's Squirt Lube. This counterfeit Squirt Lube product being sold by Defendants is contained in a bottle with an almost identical appearance to that used by Bikinvention's Squirt Lube. As shown on the attached pictures, the subtle differences in bottle shape and cap color do little to distinguish the counterfeit bottle, with the white cap, from the original Squirt Lube with the blue cap. Importantly, the typeface, language and graphics on the

bottle – Squirt's trade dress - are nearly identical. *See*, pictures of Bikinvention's Squirt Lube (blue cap) and the counterfeit Squirt Lube (white cap), attached as Exhibit C.

22. Notably, the contents of the counterfeit Squirt Lube are different from the original Squirt Lube. The counterfeit Squirt Lube is yellower in color, and appears to have a lower viscosity, indicating a lower wax content than Bikinvention's Squirt Lube. Initial tests show that the counterfeit Squirt Lube being sold by Defendants is an inferior product, the sale of which, under the Squirt name, is damaging its customer base and reputation. Defendant's sales of a counterfeit Squirt Lube containing an inferior formula emphasizes the lengths to which Defendants have and will go to harm Squirt's reputation.

23. Defendants are also knowingly misrepresenting to customers the was content of Squirt Lube, stating it is only 25% when in actuality it is 38%.

24. In enlisting Defendants as the exclusive Squirt distributors for the United States and Canada, Bikinvention placed trust and confidence in Defendants to represent its Squirt line of products in an honest manner.

256. Bikinvention acted reasonably in placing such trust and confidence in Defendants Tucker and Squirt, LLC.

26. Defendants invited such trust and confidence, representing to Bikinvention their intention to act for the benefit of Bikinvention in marketing and distributing the Squirt line of products in the United States and Canada.

27. Defendants breached this trust and confidence in failing to act for the benefit of Bikinvention and the Squirt product line, by marketing and selling products without authorization under the Squirt name, and in marketing and engineering a product in direct competition with Squirt.

28. Defendants have infringed upon the Squirt mark, injuring Plaintiff.

6

29	Defendants have infringed upon the Squirt trade dress, injuring Plaintiff.

30.	Defendants' infringement upon the Squirt mark and trade dress was willful and deliberate. Defendants induced Plaintiff into providing the artwork and graphics for Squirt Lube for the purpose of printing labels in the United States. Defendants abused Plaintiff's trust and confidence and deliberately deceived Plaintiff in order to appropriate Plaintiff's trademark and trade dress and to benefit from the goodwill Plaintiff has established for the Squirt mark and trade dress.

31.	Having acquired the means and ability to counterfeit Squirt Lube, Defendants then intentionally and knowingly used the counterfeit mark and trade dress in commerce, offering and selling an inferior product under the guise that it was Bikinvention's Squirt Lube.

32.	In so doing, Defendants intentionally set out to deceive Squirt Lube customers into buying a counterfeit and inferior product with the intention of damaging the reputation established by Squirt Lube.

33.	Moreover, Defendants sought to damage Squirt Lube's reputation by offering a counterfeit, inferior product so that they could introduce a new, improved product to the cycling marketplace under the name "Enduro."

## FIRST CLAIM FOR RELIEF
### Violation of the Lanham Act, 15 U.S.C. § 1114(a)(1) – Trademark Infringement

34.	Plaintiff incorporates the allegations set forth in Paragraphs 1 through 32 as though fully set forth herein.

35.	15 U.S.C. § 1114(1) provides, in relevant part:

> Any person who shall, without the consent of the registrant –
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to

        cause mistake, or to deceive; or

        (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

        Shall be liable in a civil action by the registrant . . . .

36. Plaintiff registered the Squirt mark with the United States Patent and Trademark Office on September 16, 2008 at Reg. No. 3,500,834. *See*, Ex. A.

37. Defendants did not have Plaintiff's permission to use the Squirt mark as alleged in this Complaint.

38. Defendants' use of the Squirt mark including, but not limited to, its sale of a bicycle lubricant under the Squirt name and image and its operation of a website under the squirtlubeus.com domain name, is likely to cause confusion and mistake and deceive consumers that Defendants' goods are, or are connected to or otherwise affiliated with, those offered by Plaintiff.

39. Defendants' use of the Squirt mark including, but not limited to, its sale of a counterfeit bicycle lubricant under the Squirt name and image and its operation of a website under the squirtlubeus.com domain name, is likely to cause confusion and mistake among consumers that Defendants' goods and services are being offered to consumers with Plaintiff's sponsorship and/or approval.

40. Defendants' association as a former distributor of Squirt and consequently the personal association with the Squirt name, further compounds the likelihood of confusion and deception with respect to whether Defendants' goods are, or are connected to or otherwise affiliated with, those offered by Plaintiff.

41. Unless Defendants are restrained and enjoined from further sale of goods under the Squirt name including, but not limited to, the counterfeit Squirt Lube, and use of the squirtlubeus.com website and domain name, Plaintiff will suffer irreparable injury and harm for which there is no adequate remedy at law.

42. Plaintiff has suffered damages as a result of Defendants' unauthorized use of the Squirt mark including, but not limited to, the sale of the counterfeit Squirt Lube and use of the squirtlubeus.com website and domain name in commerce.

## SECOND CLAIM FOR RELIEF
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) – Trade Dress Infringement

43. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 41 as though fully set forth herein.

44. 15 U.S.C. § 1125(a)(1) provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

45. Plaintiff's trade dress, which consists of a 120 ml opaque bottle with a blue cap and sticker label with red, white, blue, gray and green details is distinctive. The label itself contains the word "squirt" in lower case letters with a red "squirt" splash mark behind the "u" and the "i." In addition, the "i" in the word squirt is designed to look like a link in a bicycle chain. The addition of

9

a bicycle chain graphic and the words "Long Lasting Dry Lube," among others, emphasize the distinctiveness of Plaintiff's trade dress.  *See*, Ex. C.

46. Plaintiff owns the distinctive trade dress described in Paragraph 43, above.

47. Plaintiff's trade dress is nonfunctional.

48. Defendants' counterfeit Squirt Lube is almost identical in appearance to Plaintiff's Squirt Lube and is in violation of 15 U.S.C. § 1125(a)(1).  Defendant's used Plaintiff's trade dress almost exactly without the consent of Plaintiff and in a manner that has caused confusion in the marketplace and which is likely to continue to cause confusion among ordinary customers as to the source, sponsorship, affiliation, or approval of the Plaintiff's goods.

49. Defendants' association as a former distributor of Squirt and consequently the personal association with the Squirt name, further compounds the likelihood of confusion and deception with respect to whether Defendants' goods are, or are connected to or otherwise affiliated with, those offered by Plaintiff.

50. Unless Defendants are restrained and enjoined from further sale of goods under the Squirt trade dress, Plaintiff will suffer irreparable injury and harm for which there is no adequate remedy at law.

51. Plaintiff has suffered damages as a result of Defendants' unauthorized use of the Squirt trade dress.

### THIRD CLAIM FOR RELIEF
### Violation of the Lanham Act, 15 U.S.C. § 1125(d)(1)(A)

52. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 50 as though fully set forth herein.

53. 15 U.S.C. § 1125(d)(1)(A) provides, in relevant part:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this

> section, if, without regard to the goods or services of the parties, that person – has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and registers, traffics, in or uses a domain name that – in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark. . . .

54. Defendants have a bad faith intent to profit from their use of the Squirt mark and trade dress through their sales and distribution of an altered product under the same name, the counterfeit Squirt Lube, as well as through their continued operation of a website under the squirtlubeus.com domain name.

55. Defendants intend to divert consumers from Plaintiff either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the counterfeit Squirt Lube.

56. Defendants' use of the Squirt mark including, but not limited to, its continued operation of a website under the squirtlubeus.com domain name, is likely to cause confusion and mistake among consumers that Defendants' goods, including the counterfeit Squirt Lube and the anticipated "Enduro," are being offered to consumers with Plaintiff's sponsorship and/or approval.

57. Defendants' acts described above violate 15 U.S.C. § 1525(d)(1)(A).

58. Unless Defendants are restrained and enjoined from further use of the Squirt mark including, but not limited to, their continued use of the squirtlubeus.com name and website domain, Plaintiff will suffer irreparable injury and harm for which there is no adequate remedy at law.

59. Plaintiff has suffered damages as a result of Defendants' use of the Squirt mark including, but not limited to, their continued use of the squirtlubeus.com website and domain in commerce.

## FOURTH CLAIM FOR RELIEF
### Common Law Trademark Infringement

60. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 58 as though

11

fully set forth herein.

62. Defendants' conduct has and will continue to cause irreparable injury to Plaintiff, for which there is no adequate remedy at law.


61. Defendants' conduct, as alleged in this Complaint, constitutes trademark infringement in violation of the common law of the state of Colorado.

62. Defendants' conduct has and will continue to cause irreparable injury to Plaintiff, for which there is no adequate remedy at law.

63. Plaintiff has suffered damages as a result of Defendants' use of the Squirt mark and trade dress in commerce.

### FIFTH CLAIM FOR RELIEF
### Unfair Competition

64. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 62 as though fully set forth herein.

65. Squirt, LLC is operating as a direct competitor of Bikinvention through its sales of the counterfeit Squirt Lube and through its anticipated sales of "Enduro."

66. Defendants have engaged in deceptive or misleading conduct by using the counterfeit Squirt Lube, the Squirt mark and trade dress in commerce.

67. Defendants' deceptive and misleading use of counterfeit Squirt Lube, the Squirt mark and trade dress has and is likely to continue to cause consumer confusion as to the source, sponsorship or affiliation of Defendants' goods.

68. Defendants' deceptive and misleading use of counterfeit Squirt Lube, the Squirt mark and trade dress has and continues to cause severe irreparable harm to Plaintiff including loss of goodwill, loss and/or diminution of competitive position in the marketplace and or ability to compete in the market, loss of reputation, loss of current and future customer relations, and loss of profits for which there is no adequate remedy at law or ability to collect damages. Therefore, pursuant to the law of equity, Plaintiff is entitled to immediate injunctive relief to prevent further

tortious acts.

69. Additionally, Defendants' deceptive and misleading use of counterfeit Squirt Lube, the Squirt mark and trade dress has caused damages to Plaintiff in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### Violation of Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq*.

70. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 68 as though fully set forth herein.

71. Defendants conduct business in the State of Colorado and, through the use of the Squirt, LLC name and squirtlubeus.com website domain in the State of Colorado, and the sales of the counterfeit Squirt Lube in this State, are engaged in trade and commerce in this State.

72. Defendants are directly competing with Plaintiff.

73. By advertising, promoting, and selling Defendants' counterfeit Squirt Lube to Colorado consumers through the use of the squirtlubeus.com website and domain name, continuing to represent themselves as Squirt distributors, distributing a counterfeit Squirt Lube in Colorado, and using the Squirt mark and trade dress in Colorado without authorization, Defendants have knowingly made, and continue to knowingly make, false representations in connection with Defendants' goods in violation of C.R.S. § 6-1-105.

74. The Defendants engaged in, or caused another to engage in, a deceptive trade practice.

75. The deceptive trade practice occurred in the course of Defendants' business.

76. The deceptive trade practice significantly impacted the public as actual or potential consumers of the Defendants' goods and services.

77. As a direct and proximate result of the Defendants' deceptive trade practices,

Plaintiff has been injured and damaged in the course of its business in an amount to be determined at trial.

78. Defendants' actions have caused and will continue to cause irreparable injury to Plaintiff for which there exists no adequate remedy at law.

79. Defendants' acts have been and continue to be knowing, deliberate, willful and wanton, and in utter disregard for Plaintiff's rights.

## SEVENTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty

80. Defendant Tucker was acting as a fiduciary of Plaintiff with respect to the exclusive distributorship rights to Squirt products in the United States and Canada and Plaintiff trusted Mr. Tucker to act in its best interests in protecting and promoting the Squirt mark and products.

81. Defendant Tucker breached his fiduciary duty to Plaintiff in preparing to and then actually selling a counterfeit Squirt Lube, and in using Squirt's mark and trade dress without authorization.

82. Plaintiff has suffered damages as a result of Defendant Tucker's breach.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Bikinvention demands that a judgment be entered against Defendants granting the following relief:

1. Permanently enjoining and restraining Defendants, its subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those acting in concert or participation with them, from:

   a. imitating, copying, or making any use of the "Squirt" mark or trade dress including, but not limited to, the sale of goods under the Squirt mark or trade dress, or operating websites with domain names containing the words "Squirt," and maintaining online social media,

business, or networking accounts or sites under a name containing the words "Squirt" including, but not limited to, blogs, LinkedIn, Facebook, and Twitter, or using third party payor accounts such as Amazon, PayPal, or EBay;

        b.    using any unauthorized colorable imitation of the "Squirt" mark or trade dress, or any other trademark, name, or designation which, either alone or in combination, is likely to cause confusion, mistake or deception as to source, origin, sponsorship, endorsement or affiliation, in connection with the promotion, advertisement, display, sale, offering for sale, production, import, export, circulation, or distribution of any product or service in such manner as to relate or connect, or tend to relate or connect, such product or service in any way with Plaintiff Bikinvention;

        c.    using any false designation of origin, false description or false representation, and from making any false representations or from engaging in any act or acts which, either alone or in combination, constitute deceptive or unfair competition by Defendants with Plaintiff Bikinvention; and

        d.    engaging in any other activity constituting unfair competition with Plaintiff or violations of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.,* or constituting infringement of the Squirt mark, or of Plaintiff's rights in, or its right to use or exploit, such trademark.

2.    Requiring Defendants to provide Plaintiff a list, including address, telephone numbers, email addresses, of all customers to whom sales of the counterfeit Squirt product was made;

3.    Awarding actual damages suffered by Plaintiff and requiring Defendants to account and pay over to Bikinvention all profits realized by Defendants' wrongful acts;

4.    Award treble damages as permitted by the Colorado Consumer Protection Act,

C.R.S. § 6-1-101, *et seq.* and 15 U.S.C. § 1117(b);

5. Requiring Defendant to recall and destroy all marketing, advertising, and promotional materials, online or in print, and goods, in the marketplace or in Defendants' possession, custody or control that bear or infringe the Squirt mark as required by 15 U.S.C. § 1118;

6. Requiring Defendants to publish a statement on all mediums upon which they advertise or market their services that they have no connection with Bikinvention or Squirt;

7. Permanently enjoining and restraining Defendants, its subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those acting in concert or participation with them, from the sales or marketing of the "Enduro" bicycle lubricant;

8. Requiring Defendants to assign all rights, title and interest in Squirt, LLC including, but not limited to, websites, accounts such as Amazon, PayPal, EBay and social media accounts including, but not limited to, Facebook to Plaintiff;

9. Awarding applicable statutory damages under 15 U.S.C. § 1117(c);

10. Awarding Plaintiff such relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any goods advertised, sold or otherwise provided by Defendants is authorized, sponsored, affiliated with, endorsed by, or originates from, Plaintiff;

11. Awarding Plaintiff its reasonable attorneys' fees and expenses as provided by applicable law, together with prejudgment interest;

12. Awarding Plaintiff such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL.**

Plaintiff demands a trial by jury as to all issues so triable.

Dated April 25, 2014.

                                        Respectfully submitted,

                                        HAMIL/MARTIN LLC

                                        By  *s/ Michael G. Martin*
                                            Michael G. Martin
                                            Cara F. Thornton
                                            HAMIL/MARTIN LLC
                                            140 E. 19th Avenue, Suite 600
                                            Denver, Colorado 80203
                                            Email: mmartin@hamilmartin.com
                                            Email: cthornton@hamilmartin.com
                               *Attorneys for Plaintiff Bikinvention 2 CC*

Plaintiff's Address:

121 Gladiolus Street
Knysna 6570, South Africa