**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-01178-CMA-MEH

BIKINVENTION 2 CC, a South African corporation,

    Plaintiff,

v.

SQUIRT, LLC, a Utah limited liability company, and
JOHN TUCKER, an individual,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER**

---

This matter is before the Court on Plaintiff's motion for a Temporary Restraining Order. (Doc. # 10.) For the following reasons, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

This case concerns a dispute about bike-chain lube. Plaintiff Bikinvention 2 CC alleges that Defendants Squirt, LLC, and John Tucker, are producing a counterfeit and inferior version of Plaintiff's "Squirt" brand of bike-chain lubricant and that Defendants plan to introduce their own lubricant brand, Enduro, in the near future. In particular, Plaintiff alleges that Defendants, who are former distributors of Squirt, are peddling their own version of bike lubricant in bottles that look nearly identical to the ones that contain

real Squirt.  *See, e.g.*, (Doc. # 10-2 (showing pictures of the nearly identical real and counterfeit Squirt bottles)).)  While the bottles are indistinguishable, what is inside is not: as Plaintiff alleges, "[t]he counterfeit product is more yellow in color than Squirt Lube, is sticky rather than smooth like Squirt, has a lower viscosity, indicating a probability of lower wax content, and is an inferior product."  (Doc. # 10, at 4 (citing affidavits from persons who have seen or used the allegedly counterfeit Squirt).)

As Plaintiffs allege, the near-identical labelling presents a problem to Plaintiff because confused bike customers who use the counterfeit product might blame Plaintiff for deficiencies that were in fact created by Defendants.  Plaintiffs further allege that Defendants are intentionally trying to diminish the value of the Squirt brand as one step in a plan to introduce onto the bike-lubricant market a rival product, Enduro, that Defendants can market as a superior product to the brand they sought to sabotage. (*Id.* at 4.)

Plaintiff alleges that Defendants' conduct violates, among other things, 15 U.S.C. § 1125(a)(1), which states in pertinent part:

> Any person who, on or in connection with any goods or services,  or any container for goods, uses in commerce any word, term,  name, symbol, or device, or any combination thereof, or any false  designation of origin, false or misleading description of fact, or  false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive  as to the affiliation, connection, or association of such person with  another person, or as to the origin, sponsorship, or approval of his  or her goods, services, or commercial activities by another person, . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[1]

## B. TEMPORARY RESTRAINING ORDER

In its motion, Plaintiff seeks a temporary restraining order to enjoin Defendants from:

(a) imitating, copying, or making any use of the "Squirt" mark or trade dress including, but not limited to, the sale of goods under the Squirt mark or trade dress, or operating websites with domain names containing the words "Squirt," and maintaining online social media, business, or networking accounts or sites under a name containing the words "Squirt" including, but not limited to, blogs, LinkedIn, Facebook, and Twitter, or using third party payor accounts such as Amazon, PayPal, or EBay;

(b) using any unauthorized colorable imitation of the "Squirt" mark or trade dress, or any other trademark, name, or designation which, either alone or in combination, is likely to cause confusion, mistake or deception as to source, origin, sponsorship, endorsement or affiliation, in connection with the promotion, advertisement, display, sale, offering for sale, production, import, export, circulation, or distribution of any product or service in such manner as to relate or connect, or tend to relate or connect, such product or service in any way with Plaintiff Bikinvention;

(c) using any false designation of origin, false description or false representation, and from making any false representations or from engaging in any act or acts which, either alone or in combination, constitute deceptive or unfair competition by Defendants with Plaintiff Bikinvention;

(d) engaging in any other activity constituting unfair competition with Plaintiff Bikinvention or violations of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, et seq., or constituting infringement of the Squirt mark, or of Bikinvention's rights in, or its right to use or exploit, such trademark, including the sales and marketing of any bicycle lubricant such as "Enduro"; and

---

[1] It is also well established that this Court can provide injunctive relief against such forms of unfair trade practices. *See, e.g.*, *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

      (e) requiring that Defendants provide a list of all customers, including address, telephone numbers and email addresses, to whom sales of the counterfeit Squirt product were made so that they may be notified that the product is counterfeit.

(Doc. # 10, at 1-2.)

Plaintiff further certified that it has provided notice of this cause of action and this motion for a temporary restraining order by emailing all pleadings in this case to Defendants at the named Defendant's personal and work email addresses. *See* (Doc. # 11.)

## II. **STANDARD**

This Court's review of Plaintiffs' motion is governed by Federal Rule of Civil Procedure P. 65(b), which states:

**(b) Temporary Restraining Order.**

> **(1) *Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
>> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>>
>> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

In essence, a TRO "is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party." Charles Alan Wright, et al., 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed. Apr. 2014 update). Moreover, while "[t]he issuance of a temporary restraining order is a matter that lies within the discretion of

the district court," a party must demonstrate "irreparable injury" as "an essential prerequisite to a temporary restraining order." *Id.* And most courts hold that a party "must demonstrate at least a reasonable probability of prevailing on the merits" in order to obtain such relief. *Id.*

Finally, while a motion for a temporary restraining order is distinct from a motion for a preliminary injunction, some courts in the District of Colorado adhere to the same familiar four-part test for granting a preliminary injunction when considering whether to grant a temporary restraining order. *See, e.g.*, *Salba Corp., N.A. v. X Factor Holdings, LLC*, No. 12-CV-01306-REB-KLM, 2014 WL 128147 (D. Colo. Jan. 14, 2014). That standard requires a plaintiff to demonstrate likelihood of success and irreparable harm but also "that the balance of equities tips in [Plaintiff's] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2]

### III.  **APPLICATION**

Plaintiff fulfills the standard for a temporary restraining order. As an initial matter, Plaintiff has met the technical requirements of Rule 65(b) by alleging with specificity in an affidavit the immediate loss or injury that will be caused by Defendants' actions, *see* (Doc. # 10-3), and by certifying in writing that it has provided notice to Defendant, *see* (Doc. # 11).

---

[2] While Courts in this district have considered these latter two factors, they can be considered at the discretion of the Court. *See, e.g.*, Charles Alan Wright, et al., 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed. Apr. 2014 update) ("The court also **may** balance the harm that might be suffered by defendant if the order were issued against the injury that would result to plaintiff if the application for the restraining order were denied. This balancing of the hardships approach is fairly common, particularly when one of the parties is a governmental unit. More generally, it also **may** be appropriate for the court to consider the effect of the requested order on the public interest." (footnotes omitted)).

Further, this Court is persuaded that Plaintiff's request to enjoin Defendants from further distribution of counterfeit Squirt meets the standard required for issuance of a temporary restraining order. First, Plaintiffs have established a reasonable probability of success at least on their claim that Defendants violated 15 U.S.C. § 1125(a)(1). Indeed, the counterfeit Squirt bottles, which look almost exactly like the real Squirt bottles, offer a textbook example of a "misleading representation" that "is likely to . . . deceive . . . as to the affiliation, connection, or association" of Defendants' product with the product produced by Plaintiff.

Second, Plaintiff has established that failing to issue a Temporary Restraining Order will cause irreparable harm. Common sense dictates that the counterfeit Squirt, which is alleged to be of an inferior quality, will diminish the Squirt brand in ways that Plaintiff will find difficult to correct. And Plaintiffs have provided examples of persons who can attest to how the counterfeit Squirt has affected their impression of the brand. *See, e.g.*, (Doc. 10-11, at 1 (affidavit of a bicycle mechanic from North Carolina who could not tell the difference between the real and counterfeit Squirt but explained why the counterfeit product "did not perform nearly as well as the actual Squirt Lube")

Third, the balance of equities tips in Plaintiff's favor, rather than in favor of alleged counterfeiters. Fourth, the public interest also tips in favor of preventing Defendants from introducing more of their counterfeit goods into the market.[3]

---

[3] This injunction also maintains the status quo: that is, the "last peaceable uncontested status existing between the parties before the dispute developed." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (quoting 11A Charles Alan Wright, et al., *Fed. Prac. & Proc. Civ.*, § 2948 (2d ed. 1995)), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

At the same time, Plaintiff's motion for a TRO requests injunctive relief beyond preventing the continued distribution of counterfeit Squirt. Plaintiff also seeks to prevent Defendants from using any "false descriptions" that "constitute deceptive or unfair competition;" "engaging in any other activity constituting unfair competition with Plaintiff or violations of the Colorado Consumer Protection." Finally, Plaintiffs seeks an affirmative inunction to require Defendants to provide a list of all customers and contact information for customers who have purchased a counterfeit Squirt product. (Doc. # 11 at 2.)

These latter requests for injunctive relief are insufficiently specific to pass muster under Rule 65. Further, Plaintiff cites no authority for the proposition that a TRO is a proper mechanism to provide the affirmative relief he seeks, and Plaintiff does not explain why it will be irreparably harmed absent an order directing Defendants to provide contact information for its customers. Thus, the Court denies this portion of the request for a TRO.

## IV.  **CONCLUSION**

For the foregoing reasons, it is

ORDERED that Plaintiff's Motion for a Temporary Restraining Order is granted in part and denied in part. It is further

ORDERED that Defendants are enjoined from:

(a) imitating, copying, or making any use of the "Squirt" mark or trade dress including, but not limited to, the sale of goods under the Squirt mark or trade dress, or operating  websites with domain names containing the words "Squirt," and maintaining online social media,  business, or networking accounts or sites under a name containing the words "Squirt"

including, but not limited to, blogs, LinkedIn, Facebook, and Twitter, or using third party payor accounts such as Amazon, PayPal, or EBay; and

(b) using any unauthorized colorable imitation of the "Squirt" mark or trade dress, or any other trademark, name, or designation which, either alone or in combination, is likely to cause confusion, mistake or deception as to source, origin, sponsorship, endorsement or affiliation, in connection with the promotion, advertisement, display, sale, offering for sale, production, import, export, circulation, or distribution of any product or service in such manner as to relate or connect, or tend to relate or connect, such product or service in any way with Plaintiff Bikinvention.

It is further

ORDERED that Plaintiff's Motion for a Temporary Restraining Order is denied without prejudice in all other respects beyond what is ordered above. It is further

ORDERED that, pursuant to Fed. R. Civ. P. 65(b)(2), this order shall expire on May 16, 2014, absent good cause shown for why the order should be extended, or consent by Defendants to extend the order. It is further

ORDERED that, pursuant to Fed. R. Civ. P, 65(c), Plaintiff shall post a bond of $1000 as security. It is further

ORDERED that Plaintiff shall provide notice of this order to Defendants. It is further

ORDERED that the Parties are instructed to call chambers together on a conference call (303-335-2174) in order to schedule time for a preliminary injunction hearing. It is further

ORDERED that Plaintiff are to submit briefing as to why this Court should grant a motion for a preliminary injunction by no later than 5:00 p.m. on May 7, 2014.[4] Defendants are to submit a response no later than 5:00 p.m. on May 9, 2014.

DATED:  May 2, 2014

TIME: 11:15 a.m.

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[4] In this briefing, Plaintiff can advance an argument as to why it is entitled to injunctive relief beyond what is provided by this order, though it must support its position with sufficient factual support and legal authority.